# THE ATTORNEY GENERAL
## OF TEXAS
### AUSTIN 11, TEXAS
ATTORNEY GENERAL


August 30, 1954

Hon. M. T. Harrington          Opinion No. S-138
Chancellor
Texas A. & M. College System   Re:  Interpretation of the Interagency
College Station, Texas              Cooperation Act with respect to
                                    contracts between state agencies
                                    for furnishing materials, and
Dear Mr. Harrington:                related questions.

      Your opinion request deals with the general problem of the authority of one state agency to furnish materials and supplies to another state agency and the methods by which this objective may be accomplished. You have presented two specific instances in which the Texas Agricultural Experiment Station has sought to contract with other state agencies for the transfer of products from its farm operations, wherein difficulties have been encountered in finding a legal method to effectuate the transfer and to reimburse the Experiment Station for the products.

      The first instance which you mention concerns a proposed contract between two branches of the A. & M. College System — the Agricultural Experiment Station and the Main College — whereby the Experiment Station would furnish milk produced in its Dairy Husbandry Department to the College Creamery. This contract was submitted to the Board of Control for approval under the Interagency Cooperation Act (Chapter 340, Acts 53rd Leg., R.S., 1953, codified as Article 4413 (32) in Vernon's Civil Statutes), but the Board of Control refused to approve it on the ground that the Act does not authorize a contract providing for the actual sale of agency property to another agency.

      In the second instance the Agricultural Experiment Station sold a quantity of seed rice which had been produced on one of its substation farms to the Texas Prison System for crop planting on one of the Prison System farms. This purchase was made on the open market through the Board of Control pursuant to Article 660 of Vernon's Civil Statutes. The Comptroller of Public Accounts refused to issue a warrant in payment for the rice on the ground that one state agency cannot sell to another state agency without express statutory authority and no such authority existed for this contract. (The applicability of the Interagency Cooperation Act was not involved in the Comptroller's refusal, as the agencies had not attempted to make the transfer in accordance with that Act.)

The reason for the passage of the Interagency Cooperation Act is stated in the preamble as follows:

". ... efficiency and economy in the administration of the State Government are necessary to carry out effectively the duties of the government to its citizens, and good faith attempts to establish economical and efficient arrangements for the exchange of services, materials and equipment between agencies of the State have sometimes been thwarted."

Section 3 of the Act provides that

"Any State agency may enter into and perform a written agreement or contract with other agencies of the State for furnishing necessary and authorized special or technical services, including the services of employees, the services of materials, or the services of equipment. . . ."

In declining to approve the proposed milk contract, the Board of Control has stated that they interpret this provision to mean that service contracts only are permissible under the Act. Apparently it is their view that a contract which provides for the furnishing of materials without the performance of an attendant "service" either of employees or of equipment is not authorized.

It should be noted that the three types of authorized services — services of employees, services of materials, and services of equipment — are listed disjunctively. Thus, a contract may be for each type separately or for any combination of the three. Looking to the complete language of the statute, we think the term "furnishing services" is used in the broad sense of making the particular commodity (labor, materials or equipment) available for the benefit or use of the receiving agency instead of in the narrow sense of performance of labor or useful work. It is our opinion that either materials or equipment may be furnished without any further attendant "services."

In the case of equipment, the statute evidently was intended to permit temporary utilization of equipment belonging to another agency where it is more economical and efficient to employ equipment already owned by the other agency than it is to purchase additional equipment or to make a contract with private concerns to have the work performed. The equipment may be furnished either with or without a concurrent furnishing of labor or materials. The services of equipment, i.e., use of the equipment, can be furnished without a permanent transfer of possession or ownership, and we would agree that this provision does not contemplate a sale or permanent transfer of equipment.

Similarly, we interpret the statute to mean that an agency may furnish materials to another agency without the furnishing agency's performing any other type of service in connection with their use. The word "materials" obviously is used to mean consumable supplies and commodities as distinguished from equipment, which is not consumed or expended through use. In the very nature of things the furnishing of supplies and materials contemplates a permanent relinquishment by the furnishing agency. It is true that this is in practical effect a sale or a gift, depending on whether reimbursement is made, in that it is a transfer of the full beneficial use to which the materials may be put. But a transfer of materials with an attendant service would also be equivalent to a sale or gift so far as the materials themselves are concerned. To hold that the statute does not permit a transfer of ownership of the materials would make this provision meaningless, since the furnishing of materials, to be of any benefit, must necessarily be accompanied by a relinquishment of any further claim to them.

Section 2 of the Interagency Cooperation Act defines "agency" as including "any service or part of a State institution of higher education." Further, Section 6 provides for the handling of intraagency transactions. Clearly, then, authorized contracts may be entered into between branches of the A. & M. College System. It is our opinion that the proposed contract between the Experiment Station and the Main College for furnishing milk to the College Creamery is authorized by the Act. Of course, the making of any authorized contract is a voluntary matter on the part of the contracting agencies, and the approval of each particular contract is within the discretion of the Board of Control.

It follows from what has been said that the transaction between the Experiment Station and the Texas Prison System for supplying seed rice could have been accomplished under the Interagency Cooperation Act with the approval of the Board of Control. But this is not the exclusive method for effecting a transfer of property between state agencies. That Act did not repeal existing statutes or supersede existing lawful means for accomplishing the same result.

The instances in which one state agency may sell to another in the regular channels of commerce are fairly rare, because very few state agencies have any general authority to sell property which they own. The inability to sell to other state agencies is not because of a lack of express authority to sell to another state agency but because of a general lack of authority to sell at all. It is our opinion that where one state agency has a general authority to sell and another agency has a general authority to buy, it is permissible for the two agencies to do business with each other, provided each is able to comply with the conditions and restrictions placed on transactions of that nature.

One such instance of a general authority to sell is found in Article 136, V.C.S., which authorizes the Agricultural Experiment Station System to sell or exchange its products. This is an authority to sell either on the open market or through contract. We are of the opinion that the Experiment Station may become the seller in any transaction wherein it can comply with the conditions and requisites for consummation of the sale, including a sale to another state agency.

This office has heretofore held that in the absence of express statutory authorization a state agency has no authority to make a bond guaranteeing performance of its contracts. Att'y Gen. Op.O-1033 (1939). Accordingly, the Experiment Station could not enter into a contract where a performance bond was required since it does not have express authority to give bond. This would be true whether the proposed contract was with another state agency or with a private concern.

Further, a state agency cannot sell to another state agency where the statute regulating state purchases limits eligible sellers to a class which excludes state agencies. Thus, in a 1931 opinion (Vol. 319, p. 918) this office held that Article 608, V.C.S., permitted printing contracts to be let only to "persons, firms, corporations, or associations of persons, who shall be residents of Texas," and that a state agency did not come within the class of eligible sellers.

The purchase of the rice in question was made under Article 660, V.C.S. This statute does not limit the class of eligible sellers or require the furnishing of a bond. We have pointed out that Article 136, V.C.S., gives the Agricultural Experiment Station the authority to sell its products in the open market. Article 660 gives the Board of Control the authority to buy in the open market. If the purchase in this instance was properly of an emergency nature as required by Article 660 (and we have no reason to question its propriety), it is our opinion that the Comptroller should have issued the warrant in payment for the rice.

You have asked what other methods are available by which transfer of property between state agencies may be accomplished. We call your attention to Articles 640 and 666-1, V.C.S., which authorize interagency transfer of surplus supplies and property which is unfit for use or no longer needed. In view of what has already been said, an extended discussion of these statutes is not necessary.

SUMMARY

A state agency may contract to furnish materials to another state agency under the Interagency Cooperation Act (Chapter 340, Acts 53rd Leg., R.S., 1953; Article 4413(32),

Hon. M. T. Harrington, page 5 (S-138)

V.C.S.) without furnishing any other type of service in connection with the use of the materials.

Apart from the Interagency Cooperation Act, a state agency which has general authority to sell property owned by it may make a sale to another state agency, provided each agency is able to comply with the conditions and restrictions placed on transactions of that nature.

APPROVED:

W. V. Geppert
Reviewer

Robert S. Trotti
First Assistant

MKW:amm

Yours very truly,

JOHN BEN SHEPPERD
Attorney General of Texas

By *Mary K. Wall*

Mary K. Wall
Assistant